**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**DERICK FALLIN,**

        Petitioner,

**v.**

        **CIVIL ACTION NO. 2:15-cv-56**
        **(BAILEY)**

**JENNIFER SAAD, Warden,**

        Respondent.

**AMENDED ORDER[1] ADOPTING REPORT AND RECOMMENDATION**

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Seibert for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Seibert filed his R&R on March 9, 2016 [Doc. 22]. In that filing, the magistrate judge recommended that this Court grant Respondent's Motion to Dismiss, or In the Alternative, Motion for Summary Judgment [Doc. 18], deny petitioner's 28 U.S.C. § 2241 motion, and dismiss this action from the docket.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is timely made. However, the Court is not required to review, under a *de novo* or any other

---

[1] This Order amends the previous Order Adopting Report and Recommendation [Doc. 25], as that Order was improperly captioned to read "United States of America, Respondent." Accordingly, this Amended Order merely fixes the previous error.

standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); ***Snyder v. Ridenour***, 889 F.2d 1363, 1366 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91, 94 (4th Cir. 1984).

Here, objections to Magistrate Judge Seibert's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. The petitioner timely filed his objections [Doc. 24] on March 21, 2016. Accordingly, this Court will conduct a *de novo* review of the portions of the magistrate judge's R&R to which the petitioner objects. The remainder of the R&R will be reviewed for clear error.

## I. Background

### A. Procedural History:

On July 21, 2015, petitioner Derick Fallin ("Fallin"), an inmate at FCI Hazelton in Bruceton Mills, West Virginia, filed an Application for Habeas Corpus pursuant to 28 U.S.C. § 2241 ("2241"), seeking an Order directing the Bureau of Prisons ("BOP") to credit him with 48 months spent in state custody and apply that time to the federal sentence he is currently serving [Doc. 1]. On October 7, 2015, the respondent, Jennifer Saad ("Saad"), filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment [Doc. 18]. On October 23, 2015, Fallin filed a Response in Opposition [Doc. 21] to the Respondent's dispositive motion.

**B. Factual Background:**

Fallin is currently serving a fifteen (15) year federal sentence imposed by the United States District Court for the District of Maryland for his convictions of "Conspiracy to Participate in a Racketeering Enterprise" and "Conspiracy to Commit Murder in Aid of Racketeering" [D. Md., 1:11-cr-353, Doc. 244]. In his Petition, he alleges that the BOP has failed to credit him with time he spent in Maryland state custody between April 15, 1997 and March 22, 2001, which, he claims, should count towards his federal sentence [Doc. 1-1]. He claims that the underlying, 1996 crime for which he spent those 48 months in state custody must be credited to his instant federal sentence as those crimes are related [Id.]. In order to properly contextualize the petitioner's claims, this Court must first examine Fallin's lengthy criminal and incarceration history between 1996 and the present day.

First, Fallin was arrested on October 10, 1996, by the Baltimore City Police Department for Possession with Intent to Distribute a Controlled Dangerous Substance ("CDS") and Distributing a CDS with a Firearm [Doc. 18-2 at 3; Doc. 18-3 at 4].[2] He was released on bond for that offense on October 13, 1996, then was rearrested by Baltimore City Police on October 15, 1996, charged with the same crimes, and was held in custody [Id. at 2; Id. at 5]. On April 15, 1997, Fallin was sentenced to five (5) years of imprisonment by the State of Maryland for the October 1996 crimes [Id.; Id. at 2]. He was paroled from the State of Maryland's Department of Corrections on March 22, 2001 [Id. at 2-3; Id. at 11-13].

At the time that those charges were filed in Maryland, Fallin was serving parole as

---

[2] This Court notes that this October 1996 arrest and conviction is the offense which is the subject of Fallin's Petition.

the result of a September 12, 1980 sentence for Robbery of a Saving and Loan Bank imposed by the United States District Court for the District of Colorado [Id.; Id. at 8]. In light of the October 1996 charges, the United States Parole Commission ("USPC") revoked Fallin's parole on October 28, 1996 [Id.; Id.]. The USPC sentenced Fallin to a three year, seventeen day term of confinement, with all time spent on mandatory release credited to him; he was to continue serving this sentence to expiration, and his federal sentence was to run concurrent with his state sentence, which at that time had not yet been imposed [Id.; Id.].

Then, on July 12, 2006, Fallin was arrested by the Baltimore City Police Department for: (1) Possession with Intent to Manufacture/Distribute/Dispense a CDS; (2) Unlawful Possession of a CDS; (3) three counts of Conspiracy related to a CDS; (4) Possession with Intent to Distribute CDS-Large Amount; (5) Distribution, etc. of a CDS with a Firearm; and (6) Possession of Firearms in relation to CDS criminal activity [Doc. 18-2 at 3; Doc. 18-3 at 15-21]. He was released on bond as to the charges on July 14, 2006; on June 4, 2008, the charges were labeled *nolle prosequi* [Id.; Id.]. Shortly thereafter, on July 3, 2008, Fallin was arrested by the Baltimore City Police Department for Assault in the 2nd Degree, and was released on bond the following day [Doc. 18-3 at 29]. On January 20, 2009, the charge was labeled *nolle prosequi* [Id. at 30].

Later, on February 19, 2010, he was again arrested by the Baltimore City Police Department for: (1) Possession with Intent to Distribute/Manufacture/Dispense a CDS; (2) Unlawful Possession of a CDS; (3) three counts of Conspiracy; and (4) three counts of Possession/Distribution CDS Packaging Material in [Doc. 18-3 at 32]. He was released on

bond on February 20, 2010 [Id. at 33]. The charges were also deemed *nolle prosequi* on August 26, 2011 [Id. at 35].

Now we arrive at the crime for which petitioner is currently serving a sentence. On June 28, 2011, a Federal Grand Jury in the United States District Court for the District of Maryland returned an eleven-count indictment against Fallin and six co-defendants, wherein he was named in eight of those counts [D. Md. 1:11-cr-353-1, Doc. 1]. The indictment reads like a plot line from HBO's popular television show *The Wire*:

> Derick Fallin is the head of a narcotics distribution organization that transports heroin, marijuana, and cocaine from New York and the American Southwest border to Maryland. [He] has been moving heroin into Maryland since at least 1996, marijuana since at least 2000, and cocaine since at least 2005 . . . The [Fallin] Organization employed several layers of workers who helped procure, ship, package, and ultimately distribute narcotics throughout Baltimore. Furthermore, members of the Organization helped obtain, divide, and hide the proceeds of the organization's business in stash houses throughout Baltimore . . . The [Fallin] Organization employed several layers of security[, including] 'Lieutenants' and 'Soliders,' [and] employed violence to ensure its place as one of the biggest drug organizations in the city. In particular, the [Fallin] Organization attempted to take swift revenge when the drug organization members were challenged or slighted.

[Id.]. Following the Indictment, Fallin was arrested by the Bureau of Alcohol Tobacco and Firearms on July 6, 2011 [Doc. 18-3 at 63; D. Md. 1:11-cr-353-1, Doc. 19]. On May 22, 2012, pursuant to a plea agreement, Petitioner pled guilty to Count One: Conspiracy to Participate in a Racketeering Enterprise, in violation of 18 U.S.C. § 1962(d), and Count Two: Conspiracy to Commit Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(5) [D. Md. 1:11-cr-353-1, Doc. 187].

On August 20, 2012, Petitioner was sentenced to 180 months on Count One and 120 months on Count Two, to run concurrently, for a total term of 180 months

imprisonment, with credit for time served in federal custody since July 6, 2011, to be followed by a term of 5 years supervised release on Count One, and a 3 years supervised release on Count Two, to run concurrently, for a total term of 5 years supervised release [Doc. 18-3 at 66-69; D. Md. 1:11-cr-353-1, Doc. 244]. After his sentence was imposed, the BOP prepared a sentence computation based on the 180-month term of imprisonment, beginning August 20, 2012, the date his federal sentence was imposed [Doc. 18-3 at 79]. The BOP awarded petitioner prior custody credit of 420 days for the time periods of: (1) July 12, 2006 – July 14, 2006; (2) July 2, 2008 – July 4, 2008; (3) February 19, 2010 – February 21, 2010; and (4) from July 6, 2011 – August 19, 2012 [Id.].[3] Based upon this calculation, the petitioner is currently scheduled to be released from BOP custody via Good Conduct Time Release, on July 20, 2024 as of the September 3, 2015 calculation by the BOP [Id.].

## II. Analysis

In his two-page filing, Fallin makes a single, multi-part objection to the Magistrate Judge's R&R. First, he complains that the, "R&R fails to address the relevance of the prior conviction that is plainly part and parcel of the instant case" [Doc. 24 at 2]. Second, he argues that, "the R&R takes 18 U.S.C. § 3585 too far," for that statute, "did not consider a circumstance where the prior credit sought was for the same conduct that time was currently being served (sic). In other words, the time sought is not being applied to

---

[3] This Court notes that the R&R incorrectly states that petitioner was awarded 9 days of jail credit for this same period [Doc. 22 at 9]. That inadvertent notation appears to be a reference on the BOP's computation which states, "[t]hese are the nine days" [Doc. 18-3 at 79]. This is seemingly a reference to the first three dates listed herein, which, when added together total 9 days of confinement.

separate terms of imprisonment, instead, it is the same term of imprisonment that is simply delayed by time" [Id.]. Because of the nature of his contentions, the second portion of petitioner's objection must be addressed first.

In general, "[a] defendant convicted of a federal crime has a right under 18 U.S.C. § 3585(b) to receive credit for certain time spent in official detention before his sentence begins." *United States v. Wilson*, 503 U.S. 329, 330 (1992). "The Attorney General, through the Federal Bureau of Prisons, is responsible for computing federal terms of imprisonment." *Id.* at 331. Pursuant to 18 U.S.C. § 3585, a federal sentence commences "on the date defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). When making a sentencing computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides that

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> (1) as a result of the offense for which the sentence was imposed, or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585(b). In *Wilson*, the Supreme Court held that, "Congress made clear that a defendant could not receive double credit for his detention time," under this statute. 503 U.S. at 337. Yet double credit is exactly what Fallin seeks here.

As noted above, in his first objection, Fallin contends that because the crime for which he is currently serving a sentence is related to his prior convictions from 1996, he

should receive credit for his time in custody for that offense [Doc. 24 at 2]. He elaborates by contending that, "there is no mention of whether the prior incarceration is the identical conduct that Fallin has already served and been punished for" [Id.]. However, his argument is misplaced.

To properly apply Fallin's prior custody credit, the date of the conspiracy offenses to which he pled guilty in his instant federal case must be established. A conspiracy is a "distinct offense from the completed object of the conspiracy." *Garrett v. United States*, 471 U.S. 773, 777-778 (1985). Because conspiracy is a continuing crime, its end date is the date the conspiracy is terminated, the date the last overt act was committed for its benefit, and the date its statute of limitations begins to run. *Toussie v. United States*, 397 U.S. 112, 122 (1970) (superseded by statute on other grounds) (statute of limitations begins to run with the last overt act in furtherance of the conspiracy). As the *Toussie* Court eloquently stated, "[i]t is the nature of a conspiracy that each day's acts bring a renewed threat of the substantive evil Congress sought to prevent." *Id.* Accordingly, while petitioner may have committed crimes related to the instant federal conspiracy for which he was incarcerated in the State of Maryland in 1996, when he continued to commit "substantive evil" after he was released from confinement, the conspiracy was renewed.

As applied to this case, the end date of Count One was June 28, 2011, the date of the indictment, and the end date of Count Two was "on or about" October 18, 2010, the date the final attempt was made to murder the intended victim, Calvin Sanders. Therefore, in calculating prior custody credit, the BOP can consider any time spent in official detention after the date of the offense, be it related or unrelated to the federal offense, that has not

been credited to any other sentence. Fallin was in exclusive federal custody at the time his federal sentence commenced on the date of its imposition, August 20, 2012, the date he was received in custody awaiting transportation to the official detention facility at which his sentence was to be served. Therefore, the only prior custody credit he was entitled to, and was awarded, were the 420 days of jail credit towards his federal sentence for the time periods in state custody from July 12, 2006 through July 14, 2006; July 2, 2008 through July 4, 2008; February 19, 2010 through February 21, 2010; and from July 6, 2011 through August 19, 2012. Accordingly, Fallin has earned the maximum prior custody credit to which he is entitled under 18 U.S.C. § 3585(b). His objections to the contrary are, hereby overruled.[4]

## CONCLUSION

Upon careful review of the record, this Court hereby **ADOPTS** the magistrate judge's Report and Recommendation **[Doc. 22]** for the reasons stated above. As such, the petitioner's Objections **[Doc. 24]** are **OVERRULED** and the respondent's Motion for Summary Judgment **[Doc. 18]** is hereby **GRANTED**. Accordingly, this Court hereby **DENIES** and **DISMISSES** the petitioner's § 2241 petition **[Doc. 1]** and this matter is **ORDERED STRICKEN** from the active docket of this Court. As such, this Court **DIRECTS**

---

[4] This Court also notes that the Double Jeopardy clause is not implicated by this finding. As the Supreme Court also noted in *United States v. Felix*, 503 U.S. 378, 391-392 (1992), it is "established doctrine that a conspiracy to commit a crime is a separate offense from the crime itself. Thus, in this case, the conspiracy charge against [Fallin] was an offense distinct from any crime for which he had been previously prosecuted, and the Double Jeopardy Clause did not bar his prosecution on that charge." As such, where Fallin implies that he should receive credit for his 1996 charges because of the Double Jeopardy clause, that argument also fails.

the Clerk to enter judgment in favor of the respondent.

As a final matter, upon an independent review of the record, this Court hereby **DENIES** petitioner a certificate of appealability on his dismissed claims, finding that petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the pro se petitioner.

**DATED:** May 13, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE